ALICE ALLEN,                          )
                                      )
            Plaintiff,                )
                                      )
      v.                              ) No. 4:10CV1928 FRB
                                      )
UNITED STATES SECRETARY OF            )
DEFENSE,                              )
                                      )
            Defendant.                )

## MEMORANDUM AND ORDER

Presently pending before the Court are the parties' cross-motions for summary judgment (Doc. Nos. 45, 52). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff Alice Allen brings this action, pro se, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, et seq., alleging that she was discriminated against in her employment with the National Geospatial Intelligence Agency (NGA), a branch of the United States Department of Defense, on account of her race and in retaliation for engaging in protected activity. Plaintiff also brings a claim of defamation against the NGA.

Defendant moves for summary judgment on plaintiff's Title VII claims arguing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on plaintiff's claims. Defendant also moves to dismiss plaintiff's

claim of defamation under Fed. R. Civ. P. 12(b)(6), arguing that it fails to state a claim upon which relief can be granted. In response to defendant's motion, plaintiff moves for summary judgment on all of her claims. Both parties have filed responsive briefs and briefs in reply. Plaintiff has also filed a sur-reply brief.

## I.  Title VII Claims

Both parties move for summary judgment on plaintiff's Title VII claims of unlawful employment discrimination.

Pursuant to Fed. R. Civ. P. 56(c), a court may grant summary judgment if the information before the court shows that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The burden of proof is on the moving party to set forth the basis of its motion, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and the court must view all facts and inferences in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). Once the moving party shows there are no material issues of fact in dispute, the burden shifts to the adverse party to set forth facts showing there is a genuine issue for trial. <u>Id.</u> The non-moving party may not rest upon her pleadings, but must come forward with affidavits or other admissible evidence to rebut the motion. <u>Celotex</u>, 477 U.S. at 324.

Summary judgment is a harsh remedy and should not be granted unless the movant "has established [its] right to judgment with such clarity as to leave no room for controversy." New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). The Eighth Circuit has noted, however, that "summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc., 838 F.2d 268, 273 (8th Cir. 1988).

A.   Background

Focused Management, Inc. (FMI), is a private business whose purpose is to employ and provide workers to fulfill contract assignments with government agencies. In October 2009, NGA contacted FMI and requested a contract employee to work as an administrative assistant for the period of October 2009 to June 2013. (Gov. Exh. A.) The NGA Tech Monitor/Point of Contact for this position was Christine Woodard. (Id.) Plaintiff applied for the position in November 2009 and was selected by FMI to perform the employment services under the contract. (Gov. Exh. B.) On December 28, 2009, plaintiff reported to NGA and began her contract employment as an administrative assistant for NGA. Plaintiff's employment ended on March 3, 2010, upon being notified by FMI that she was being terminated from her employment as an administrative

assistant.  (Gov. Exh. H.)

Upon plaintiff's arrival at NGA on December 28, 2009, and thereafter, Mary B. Leible, Staff Officer with NGA, was responsible for training plaintiff to perform the duties required in the contracted position of administrative assistant.  In e-mails dated January 14, 2010, Judith Packman, Supervisory Project Scientist at NGA, informed Ms. Leible and Ms. Woodard of plaintiff's inadequate performance in preparing badges and in failing to follow detailed instructions provided on January 6, 2010.  (Gov. Exh. F1 at ECF pp. 6-7[1]; Exh. K.)  In e-mails dated January 19, 2010, Ms. Leible reminded plaintiff to perform calendar duties and roster updates pursuant to previous instructions provided on January 6, 2010. (Gov. Exh. F1 at ECF p. 9.)  In an e-mail dated January 26, 2010, Ms. Leible informed Ms. Packman and Ms. Woodard that plaintiff had difficulty independently accessing and navigating online resources to perform the tasks required.  Ms. Leible reported that she advised plaintiff that it would take initiative and investigation to learn the resources and to be able to retrieve the information needed inasmuch as Ms. Leible did not know everything required for plaintiff to do her job.  (Id. at ECF pp. 13-14.)  In her Declaration dated August 6, 2010, Ms. Leible set out additional

---

[1]Some of the documents submitted to the Court bear multiple and sometimes inconsistent page numbers, while other documents bear no page numbers at all.  When referring to specific pages of these documents, the Court will identify the respective pages by the page numbers assigned by the Court's Electronic Case Filing system (ECF).

performance deficiencies which occurred on February 10 and 25, 2010, relating to time sheet entries, multiple mistakes therein, and untimely completion of the work. (Gov. Exh. E at ECF pp. 4-5.)

Jeffrey P. Appel, Staff Officer with NGA, was responsible for overall program management during this period of plaintiff's employment, including management of the AdminServ Program responsible for arranging contracts to obtain secretarial and administrative support for NGA management. (Gov. Exh. J at ECF pp. 2-4.) Written concerns regarding plaintiff's performance as expressed by Ms. Leible, Ms. Packman and Ms. Woodard were provided to Mr. Appel on February 3, 2010. Based on these expressed concerns, Mr. Appel characterized and summarized plaintiff's performance problems as follows:

> -- Inability to follow written instructions and guidance provided for accomplishing assigned tasks.
> -- Inability to complete tasks assigned in a timely manner.
> -- Inability to work with a degree of independence, and significant Government feedback/interface is required.
> -- Inability to proactively engage with Government staff and act as an advisor to management.
> -- Has not demonstrated the skills, knowledge and abilities to support travel planning and DTS documentation requirements.
> -- Has not demonstrated the skills, knowledge and abilities to support time and attendance functions in DCPS.
> -- Has not demonstrated the skills, knowledge and abilities to support PeopleSoft data entry requirements.
> -- Has not demonstrated proficiency in MS

Outlook calendar tools.

(Id. at ECF p. 5.)

On February 18, 2010, Mr. Appel sent a summary of plaintiff's performance issues to NGA contracting officers, Major Demetrius Green and Frederica Stevens. Mr. Appel also sent the summary to NGA's contract attorney, Eric Croft. After being provided such information, Major Green informed Mr. Appel that he concurred with the actions to be taken with regard to plaintiff, and Mr. Croft informed Mr. Appel that the actions to be taken appeared reasonable. (Id. at ECF pp. 6-7.)

Mr. Appel provided his prepared summary of plaintiff's performance problems to George Jackson, President of FMI, and formally cited such issues in an e-mail to Mr. Jackson on March 2, 2010. (Gov. Exh. F1 at ECF p. 1; Exh. J at ECF pp. 5-6, 8-9.)[2] Upon documenting plaintiff's performance problems and addressing such problems with FMI, Mr. Appel "requested that FMI provide staff with the skills, knowledge and abilities to fulfill the terms of the contract." (Id. at ECF p. 5.)

In a letter dated March 3, 2010, FMI informed plaintiff

---

[2]At a discovery hearing on October 11, 2011, counsel for the government represented that the direct report from NGA to FMI regarding plaintiff's performance was included in the report of investigation prepared at the administrative level of this proceeding. Counsel represented that the cover page of a packet of e-mails exchanged between NGA employees constitutes this report to FMI (Gov. Exh. F1 at ECF p. 1), and that the e-mails were attached thereto to support this report (id. at ECF pp. 2-23).

that, effective that same date, her employment as an administrative assistant was terminated. The letter was signed by George Jackson. (Gov. Exh. H.) In his Declaration dated August 6, 2010, Mr. Appel stated that plaintiff's employment was terminated because "FMI/Ms. Allen experienced significant difficulty in performing assigned tasking, which resulted in significant performance problems under the contract. FMI/Ms. Allen was unable to fulfill the terms of the contract." (Gov. Exh. J at ECF p. 4.)

Prior to the period of employment at issue in this cause, plaintiff worked at NGA on numerous other occasions. From June 1978 until her retirement in September 2003, plaintiff worked at NGA as a civilian employee. Thereafter, plaintiff worked as a contract employee from November 2004 to May 2005, from March 2006 to February 2008, and from August 2008 to August 2009.[3] Throughout these previous periods of employment, and specifically through July 2009, plaintiff participated in and completed numerous NGA-sponsored training courses which were required for the performance of plaintiff's jobs with NGA and/or for professional development. Performance evaluations regarding plaintiff's previous employment with NGA show plaintiff to have met or exceeded expectations and/or to be superior in her performance of the assigned job(s). (Pltf.'s Exhibits, Doc. No. 54 at ECF pp. 7-15, 17-21, 25-28, 33-56, 62.)

_____

[3]Plaintiff claims that each period of employment, including her twenty-five years as a civilian employee, ended as a result of NGA's discriminatory practices. (See Pltf.'s Stmnt. of Uncontr. Mat. Facts, Doc. No. 53 at paras. 27-32.)

During the period of employment at issue in the instant cause, that is, from December 28, 2009, through March 3, 2010, plaintiff had pending before the EEOC a charge of discrimination against NGA relating to a previous period of employment as a contract employee. (Gov. Exh. C, Pltf.'s Depo. at pp. 100-02.) The EEOC entered an Order in that case on February 4, 2010, in which it acknowledged plaintiff's request for hearing. On February 23, 2010, an agency representative acting on behalf of NGA directed discovery requests to plaintiff in relation to the case. (Pltf.'s Sur-Reply, Doc. No. 65, Exhs. 14, 24.) At no time prior to plaintiff's termination on March 3, 2010, did Mr. Appel, Ms. Leibel or Ms. Packman have knowledge that plaintiff was involved in previous EEOC activity. (Gov. Exh. E at ECF p. 3; Exh. J at ECF p. 9; Exh. K at ECF p. 3.) Plaintiff has no direct knowledge that Ms. Woodard was aware of her previous EEOC activity, but feels it reasonable to believe that Ms. Woodard had such knowledge inasmuch as "everybody knew [plaintiff] at this particular time and . . . knew [she] was a person against discrimination[.]" (Gov. Exh. C, Pltf.'s Depo. at p. 32.)

Throughout this period of employment, plaintiff was the only African-American employee in her unit of approximately thirty persons. (Gov. Exh. C, Pltf.'s Depo. at pp. 46-47, 104.)

Plaintiff initiated contact with the EEOC on March 5, 2010, regarding the circumstances of her termination as an

administrative assistant with NGA. At the time of such contact, an employee had not been placed in the position previously occupied by plaintiff. An employee had been identified by FMI to fill the position but, as of August 6, 2010, had not yet started work and was awaiting security clearance. (Gov. Exh. J at ECF p. 10.) In August 2010, Ms. Leible was performing the duties typically assigned to the administrative assistant position. (Gov. Exh. E at ECF p. 8.)

B.    <u>Discussion</u>

    1.    *Independent Contractor v. Employee*

    Defendant first contends that plaintiff cannot recover against NGA on her Title VII claims inasmuch as NGA was not her "employer." Defendant argues that FMI was plaintiff's employer and that plaintiff's relationship with NGA was that of an independent contractor assigned by FMI to perform contract work at NGA.

    "The law is well established that Title VII protects employees, not independent contractors, from discriminatory employment practices." <u>Hunt v. State of Mo., Dep't of Corr.</u>, 297 F.3d 735, 741 (8th Cir. 2002). However, in determining whether an individual is an employee or independent contractor for Title VII purposes, courts are cautioned against relying on the existence of a contract that refers to a party as an independent contractor, "because an employer may not avoid Title VII by affixing a label to a person that does not capture the substance of the employment

relationship." Id. (internal citations and quotation marks omitted). Instead, courts must undergo a "fact-intensive" examination "of all aspects of the working relationship between the parties." Id. (internal citations and quotation marks omitted).

To determine whether a hired party is an "employee" for purposes of Title VII, courts consider:

> "the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. No one of these factors is determinative."

Lerohl v. Friends of Minn. Sinfonia, 322 F.3d 486, 489 (8th Cir. 2003) (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-752 (1989)).

In addition, although being employed by an agency for the purpose of providing work to a contracting business is a factor to be considered, it is not necessarily the decisive factor in assessing a party's employment status with a contracting party. Hunt, 297 F.3d at 742. Indeed, for purposes of conferring standing to sue under Title VII, a person may have two or more employers for the

same work.  Id. ("nothing in the law precludes the possibility that a person may have two or more employers for the same work."); see also Newsom v. Anheuser-Busch Cos., Inc., 286 F. Supp. 2d 1063, 1068 (E.D. Mo. 2003).

The undisputed facts in the present case establish that, for purposes of Title VII, plaintiff was an employee of NGA. Although plaintiff was selected and hired by FMI to fulfill its contract with NGA, received her paycheck and W-2 from FMI, and received notice of her termination from FMI, the undisputed evidence shows that NGA exclusively controlled the manner and means by which plaintiff actually performed the job.  Specifically, the evidence shows that the level of skill required for the work to be performed was set by NGA; the premises, instrumentalities and tools of plaintiff's work, including NGA employee files, were exclusively provided by NGA; the duration of the job at NGA was expected to be in excess of three years; the details of the work plaintiff performed and was expected to perform were assigned by NGA; the hours and days worked by plaintiff were established by NGA; and the work performed by plaintiff was part of the regular business of NGA.  See Hunt, 297 F.3d at 742-43 (nurses assigned by temporary staffing agency to provide services to Missouri prisons were employees of Missouri Department of Corrections as well as of agency; nurses did not work independently and were under supervision of the DOC, even though they were directly paid by the

agency).  Although defendant argues that it was FMI and not NGA that terminated plaintiff, the undisputed evidence shows that NGA documented the deficiencies in plaintiff's performance, made such deficiencies known to FMI, and requested that FMI "provide staff with the skills, knowledge and abilities to fulfill the terms of the contract." (Gov. Exh. J at ECF p. 5.) See Hunt, 297 F.3d at 742 (temporary agency nurses did not work independently and were constantly under the supervision and scrutiny of DOC).  Almost immediately upon receipt of NGA's report, FMI terminated plaintiff. On these undisputed facts, it cannot reasonably be said that NGA played no role in plaintiff's termination.

Accordingly, on the evidence now before the Court in this cause, plaintiff has sufficiently demonstrated that she was an employee of NGA for Title VII purposes, as opposed to an independent contractor.  Defendant's claim otherwise is denied. The Court therefore proceeds to review the motions for summary judgment as they relate to the substance of plaintiff's Title VII claims of retaliation and race discrimination.

2.  *Retaliation*

Plaintiff claims that the termination of her employment as an administrative assistant at NGA on March 3, 2010, was in retaliation for her engaging in protected activity, and specifically, for filing with the EEOC and pursuing a charge of discrimination against NGA in relation to prior employment as a

contract employee.   Defendant argues that plaintiff cannot establish a *prima facie* case of retaliation.   For the following reasons, defendant's argument is well taken.

To establish a *prima facie* case of retaliation under Title VII, plaintiff must show 1) that she engaged in protected conduct, 2) that reasonable employees would have found the challenged retaliatory action materially adverse, and 3) that the materially adverse action was causally linked to the protected conduct.  Weger v. City of Ladue, 500 F.3d 710, 726 (8th Cir. 2007) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).  Where a plaintiff fails to show a causal link between the protected conduct and the adverse employment action, summary judgment is proper.  Erenberg v. Methodist Hosp., 357 F.3d 787, 793 (8th Cir. 2004).

Here, defendant argues, and the undisputed evidence shows, that no causal connection exists between the filing and pendency of plaintiff's previous EEOC complaint and her termination at issue in this cause.  At the time they documented plaintiff's multiple performance deficiencies, Ms. Leible and Ms. Packman had no knowledge of plaintiff's previous EEOC activity.  Nor did Ms. Leible or Ms. Packman know of such activity at the time of plaintiff's termination.  Likewise, when Mr. Appel received notice of plaintiff's performance deficiencies and determined to request that FMI provide someone with the skills appropriate to perform the

job, he had no knowledge of plaintiff's previous EEOC activity. When, at the time of adverse employment action, the decision makers are not aware of a plaintiff's protected activity, the causation element of establishing retaliation cannot be met. <u>Porter v. City of Lake Lotawana</u>, 651 F.3d 894, 898-99 (8th Cir. 2011); <u>Robinson v. Potter</u>, 453 F.3d 990, 994 (8th Cir. 2006). Title VII's protection from retaliation does not insulate an employee from the consequences of inadequate work performance. <u>Smith v. Ashland, Inc.</u>, 250 F.3d 1167, 1174 (8th Cir. 2001); <u>Jackson v. St. Joseph Hosp.</u>, 841 F.3d 1387, 1391 (8th Cir. 1988).

To the extent plaintiff contends that the action which occurred in her EEOC case on February 4 and 23, 2010, put NGA on notice of her protected activity, the undersigned notes that Ms. Leible and Ms. Packman documented plaintiff's performance deficiencies throughout January 2010, which was prior to the action in the EEOC case. In addition, Mr. Appel became aware of plaintiff's performance deficiencies by written notice on February 3, 2010; again, prior to the action in the EEOC case. <u>Cf.</u> <u>Smith v. Ashland, Inc.</u>, 250 F.3d 1167, 1173-74 (8th Cir. 2001) (retaliation claim not supported by temporal proximity when plaintiff's performance problems were documented before complaint to EEO). Nevertheless, "more than a temporal connection is required to present a genuine factual issue on retaliation." <u>Carrington v. City of Des Moines, Iowa</u>, 481 F.3d 1046, 1052 (8th Cir. 2007)

(internal citation and quotation marks omitted).

Plaintiff claims that, because of her prior EEOC complaints against NGA, she was known for engaging in protected conduct and that it is thus reasonable to believe that the decision makers were indeed aware of her prior EEOC activity at the time of the adverse action here. As evidence to support this contention, plaintiff has submitted an excerpt from the deposition of Kathleen Strebeck, who testified that plaintiff was known as a "frequent filer" with respect to complaints of discrimination. Such testimony, however, was obtained in relation to a charge of discrimination plaintiff filed against defendant in 2003. (Pltf.'s Objs., Doc. No. 62 at p. 3; Exh. 61.) Plaintiff presents no evidence that Ms. Strebeck played any role in her termination at issue in this case which occurred in March 2010. A statement made by this non-decision maker in 2003 is "too remote in time to support an inference of discriminatory animus" in the decision to terminate plaintiff seven years later. See Watson v. O'Neill, 365 F.3d 609, 616 (8th Cir. 2004). With nothing more, plaintiff's unsupported assertion of her belief that the relevant decision makers knew of her prior EEOC activity when they determined to terminate her in March 2010 is insufficient to withstand summary judgment. Cf. Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997) (statements based only on "information and belief" do not constitute admissible evidence establishing actual knowledge of

facts).

Plaintiff has therefore failed to establish any genuine issue of material fact showing a causal connection between her previous EEOC activity and her termination in March 2010. As such, defendant is entitled to summary judgment as a matter of law on plaintiff's claim of retaliation.

3.    *Race Discrimination*

Plaintiff claims that the termination of her employment as an administrative assistant in March 2010 was on account of her race. Defendant argues that plaintiff cannot establish a *prima facie* case of race discrimination inasmuch as plaintiff cannot demonstrate that similarly situated employees outside of plaintiff's protected class were treated differently. For the following reasons, defendant's argument is well taken.

To make a *prima facie* case of race discrimination in the circumstances of this case, plaintiff must show that 1) she was a member of a protected class, 2) she was meeting her employer's legitimate job expectations, 3) she suffered an adverse employment action, and 4) similarly situated employees outside the protected class were treated differently. <u>Wimbley v. Cashion</u>, 588 F.3d 959, 962 (8th Cir. 2009). To satisfy the fourth element, plaintiff must show that similarly situated employees were accused of the same or similar conduct and were disciplined in different ways. <u>Green v. Franklin Nat'l Bank of Minneapolis</u>, 459 F.3d 903, 913 (8th Cir.

2006). Plaintiff has failed to make such a showing here.

Plaintiff contends that other employees performing the same work she performed made mistakes, asked questions, and otherwise engaged in the same imperfect performance as plaintiff during her employment as an administrative assistant. To support this contention, plaintiff has submitted her handwritten notes describing what she perceived to be the performance lapses of Ms. Leible during this same employment period. (<u>See</u> Pltf.'s Objs., Doc. No. 62, Exh. 60.) Such unsworn statements offered to prove the truth of the matter asserted therein are hearsay and cannot be considered in determining the instant motions for summary judgment. <u>Erickson v. Farmland Indus., Inc.</u>, 271 F.3d 718, 728 (8th Cir. 2001).

Nevertheless, the undisputed evidence before the Court shows that plaintiff and Ms. Leible were not similarly situated. Ms. Leible held a position dissimilar to that of plaintiff and had duties significantly dissimilar to those of plaintiff. Specifically, Ms. Leible's responsibilities in her position as Staff Officer included:

> Government purchase card holder providing
> support to various locations; monitor Lab R&D
> Deliverable Report and documentation;
> coordinate visits/meetings/ceremonies for IIG
> St. Louis to include logistics, security
> clearances, conference room reservations,
> meeting invitations, etc.; member of support
> team to coordinate personnel, equipment, and
> furniture move for entire St. Louis InnoVision

> department; InnoVision West Representative for
> Business Continuity Team; provide Records
> Management support to IIG St. Louis; prepare
> Defense Travel System budget reports for IIG
> business office[.]

(Gov. Exh. E at ECF p. 2.)

To the extent Ms. Leible held duties which overlapped plaintiff's, she was merely to "serve as back-up to the Administrative Assistant in providing administrative support[.]" (<u>Id.</u> at ECF pp. 2-3.) Persons who work in different positions are not similarly situated. <u>LaCroix v. Sears, Roebuck & Co.</u>, 240 F.3d 688, 694 (8th Cir. 2001).

To the extent plaintiff otherwise makes general claims that Caucasian employees were not terminated for asking questions, making mistakes and being late on assignments, plaintiff has produced no admissible evidence indicating that she and such employees were similarly situated and that such employees were treated more favorably than she in similar circumstances. Unsubstantiated allegations of similarity are insufficient. <u>Cherry v. Ritenour Sch. Dist.</u>, 361 F.3d 474, 479 (8th Cir. 2004).

Finally, to the extent plaintiff relies on the Declarations of Joseph Evans, Edward Allen, and Felicia Allen and their attestations as to the characteristics of a good employee and their understanding of the circumstances surrounding plaintiff's employment and termination, plaintiff admits that such declarants do not have any direct knowledge of the relevant circumstances. (Gov. Exh. C, Pltf.'s Depo. at pp. 79-93.) Plaintiff cannot rely

on hearsay statements to defeat summary judgment. <u>Tuttle v. Lorillard Tobacco Co.</u>, 377 F.3d 917, 923-24 (8th Cir. 2004). To the extent plaintiff likewise relies on the Declaration of Charlotte Johnson, Ms. Johnson herself declares that she is not a witness for plaintiff but rather is "a concern [sic] citizen and someone like a juror." (Pltf.'s Exhibits, Doc. No. 54 at ECF p. 58.) Finally, to the extent plaintiff relies on the Declaration of Mary Ann Peterson, a review of the Declaration shows Ms. Peterson to attest to her years of teaching experience, her opinion as to what characteristics are displayed by good students, the dates of plaintiff's employment with NGA, and the reasons given for plaintiff's termination. (<u>Id.</u> at ECF pp. 31-32.) Nothing in these Declarations provides evidence demonstrating that plaintiff was treated differently than similarly situated employees outside of her protected class. <u>Cf.</u> <u>Allen v. Entergy Corp.</u>, 181 F.3d 902, 905-06 (8th Cir. 1999) (conclusory affidavits devoid of specific factual allegations rebutting moving party's evidence cannot defeat summary judgment).

In sum, plaintiff simply has produced no admissible evidence indicating that a similarly situated Caucasian employee was treated more favorably than she in similar circumstances. Accordingly, plaintiff has failed to establish a *prima face* case of race discrimination in the circumstances of this case, and her

claim of such discrimination must fail.[4]

## II. Defamation

In her Amended Complaint, plaintiff claims that defendant's statements that she was not performing her employment duties up to the level required by her position and that she threatened a government official[5] were defamatory and resulted in her termination of employment under the government contract. (Pltf.'s Amd. Compl., Doc. No. 24 at paras. 26-33, 35-39, 51-52.) Plaintiff claims that the statements were made "within the course and scope of duty/employment on the government contract." (Id. at para. 30.)

An action against the United States under the Federal

---

[4]To the extent plaintiff contends that the Court should apply a disparate impact analysis to her claim of race discrimination, a review of plaintiff's claim and the evidence submitted shows plaintiff to attack the subjective decision-making process in her employment circumstances rather than point to a facially neutral employment practice that operates in a discriminatory manner. The application of a disparate impact analysis is therefore inappropriate to plaintiff's claim of race discrimination. See Talley v. United States Postal Serv., 720 F.2d 505, 506-07 (8th Cir. 1983). Regardless, even if such analysis was appropriate in this case, plaintiff cannot establish a *prima facie* case of disparate impact inasmuch as she has failed to show "an identifiable, facially-neutral personnel policy or practice" which is causally connected to "a disparate effect on members of a protected class[.]" Franklin v. Local 2 of the Sheet Metal Workers Int'l Ass'n, 565 F.3d 508, 516 (8th Cir. 2009).

[5]In her original Complaint, plaintiff similarly averred that the defendant accused her of threatening a government official. Upon plaintiff's own motion, this averment was stricken from the original Complaint. (See Doc. Nos. 9, 17.) Although plaintiff makes this same averment in her Amended Complaint, neither party has moved to strike this allegation.

Tort Claims Act (FTCA) is the only remedy available to an individual seeking redress for an injury caused by the commission of a tort by a federal employee if the federal employee engaged in the alleged tortious conduct while acting within the scope of their employment. See Heuton v. Anderson, 75 F.3d 357, 359 (8th Cir. 1996). In such circumstances, the Attorney General certifies to the Court that the federal employee was acting within the scope of their employment and then notifies the Court that the United States should be substituted as party defendant for the federal employee. Id. at 359-60. A plaintiff may challenge the Attorney General's certification, however, at which time the Court must determine whether the defendant was acting within the scope of their employment when the alleged tortious conduct occurred. Id. at 360.

Here, plaintiff claims in her Amended Complaint that the alleged defamatory conduct occurred "within the course and scope of duty/employment on the government contract." Plaintiff would not appear to challenge, therefore, that the speaker was acting within the scope of their federal employment when the statements were made. The FTCA does not waive sovereign immunity for claims of defamation, however, and thus precludes suits against the United States for defamation. 28 U.S.C. § 2680(h); Heuton, 75 F.3d at 361; McAdams v. Reno, 64 F.3d 1137, 1144 (8th Cir. 1995). A claim of defamation against the United States, therefore, must be dismissed. McAdams, 64 F.3d at 1144.

The undersigned notes, however, that the Attorney General never moved to substitute the United States as party defendant for the named defendant in this cause, nor invoked the FTCA to defend plaintiff's claim of defamation. Instead, defendant argues only that plaintiff fails to state a claim of defamation under Missouri law. To refute defendant's argument, plaintiff likewise relies on Missouri law. To the extent plaintiff's claim of defamation can be construed to allege a claim arising only under state law, that is, that the alleged defamatory remarks were made while the speaker was *not* acting within the scope of their federal employment, the undersigned determines to decline to exercise supplemental jurisdiction over the claim inasmuch all claims over which this Court has original jurisdiction will be dismissed. 28 U.S.C. § 1367(c)(3); <u>see also</u> <u>Anderson v. Franklin Cnty., Mo.</u>, 192 F.3d 1125, 1131 (8th Cir. 1999); <u>American Civil Liberties Union v. City of Florissant</u>, 186 F.3d 1095, 1098-99 (8th Cir. 1999) (when state and federal claims are joined and all federal claims are dismissed on a motion for summary judgment, state claims are ordinarily dismissed without prejudice); <u>Willman v. Heartland Hosp. East</u>, 34 F.3d 605, 613-14 (8th Cir. 1994) (same).[6]

Accordingly, for all of the foregoing reasons,

---

[6]Plaintiff, of course, is free to pursue this claim in an appropriate state court if she so chooses.

**IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment and Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. No. 45) is **GRANTED** to the extent defendant seeks summary judgment on plaintiff's claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, et seq., that she was unlawfully discriminated against in her employment on account of her race and in retaliation for engaging in protected conduct. In all other respects, defendant's motion is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's Cross Motion for Summary Judgment (Doc. No. 52) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiff's Motion for a Jury Trial (Doc. No. 51) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that plaintiff's supplemental claim of defamation under Missouri law is dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

Judgment shall be entered accordingly.


_____
UNITED STATES MAGISTRATE JUDGE


Dated this  _8th_  day of February, 2012.